947 P.2d 1013

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jack ANDERSON, Defendant–Appellant.**

**No. 22842.**

Court of Appeals of Idaho.

Nov. 13, 1997.

Timothy W. Stricklin, Coeur d'Alene, for defendant-appellant.

Alan G. Lance, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

LANSING, Chief Judge.

This is an appeal from a judgment of conviction for driving under the influence of alcohol (DUI). We find the appellant's claims of errors at trial to be without merit, and we therefore affirm the judgment of conviction. However, due to violation of the appellant's statutory right against self-incrimination at the sentencing hearing, we vacate the sentence and remand the case for resentencing.

## I

### FACTS AND PROCEDURAL BACKGROUND

Deputy Ward Crawford of the Kootenai County Sheriff's Department received a radio dispatch regarding a suspicious male who was in a pickup parked at a market in Hayden, Idaho. Upon arrival at the market, deputy Crawford saw the appellant, Jack Michael Anderson, seated in a pickup in the parking lot. As deputy Crawford approached, Anderson started the vehicle's engine. When Anderson exited the pickup at Crawford's request, Crawford observed that Anderson appeared to be unsteady on his feet. Anderson admitted to the deputy that his driver's license had been suspended because of a previous offense and that he had privileges only to drive to and from work. He also admitted to having recently consumed three or four beers. After Anderson failed to satisfactorily perform several field sobriety tests, he was arrested for driving under the influence of alcohol (DUI), I.C.

§ 18–8004, and for driving without privileges, (DWP), I.C. § 18–8001. A subsequent breathalyzer test indicated that Anderson's breath alcohol concentration exceeded the legal limit.

During the course of Anderson's jury trial in the magistrate division of the district court, the charge of driving without privileges was dismissed upon the State's motion, but Anderson was found guilty of the DUI charge. Anderson appealed to the district court, which affirmed the judgment and sentence. On further appeal to this Court, Anderson argues that the magistrate erred: (1) in not allowing Anderson to show the jury his scarred legs; (2) in admitting an officer's testimony regarding a horizontal gaze nystagmus test; (3) in commenting on the reliability of the HGN test; (4) in compelling Anderson to testify against himself at sentencing; and (5) in requiring him to post a $10,000 appeal bond as a prerequisite for an order to stay the judgment pending appeal. Anderson also asserts that he is entitled to a new trial due to prosecutorial misconduct.

## II

## ANALYSIS

### A. Evidence of Anderson's Injuries

Anderson first contends that the magistrate erroneously excluded evidence. When Anderson took the witness stand at trial, defense counsel asked him to display his legs, which allegedly were heavily scarred, to the jury. The prosecutor objected, arguing that the scars were not relevant. Anderson's attorney responded, "It would be self-evident from the common understanding of the jury that these kind of scars can create a problem with doing certain physical activities.... They could have had an effect on the field sobriety tests." The magistrate sustained the prosecutor's objection, and Anderson was not permitted to show the scars on his legs to the jury. On appeal, Anderson contends that his legs were demonstrative evidence of a physical impairment which he should have been allowed to show the jury.

■ Evidence is relevant if it has "any tendency to make the existence of any fact

that is of consequence ... more probable or less probable than it would be without the evidence." I.R.E. 401. Evidence is not admissible if it is not relevant. I.R.E. 402. Here, Anderson has not shown that the scars on his legs were relevant to any material issue in the case. Anderson did not testify that leg injuries had adversely affected his balance or his ability to perform the field sobriety tests on the day of his arrest. Absent such testimony, the scars did not tend to prove or disprove any fact that was of consequence to the outcome of the trial. The magistrate's ruling on the proffered evidence was therefore correct.

### B. The Horizontal Gaze Nystagmus Test

Anderson also contends that the magistrate should not have admitted the testimony of deputy Lisa Schueller regarding a horizontal gaze nystagmus (HGN) test. Over Anderson's objection, Schueller testified that she administered an HGN test to Anderson and that his eye movements during the test gave an indication of alcohol impairment. Anderson argues that this type of opinion testimony could only be introduced through a qualified expert and that Schueller lacked sufficient knowledge to so qualify.

■ The Idaho Supreme Court has held that a police officer may qualify as an expert to testify about a defendant's performance of the HGN test. *State v. Garrett,* 119 Idaho 878, 811 P.2d 488 (1991). In *Garrett,* the Court concluded that the officer was qualified based on his training by the Idaho State Police and his attendance at field sobriety test seminars. *Id.* at 882–83, 811 P.2d at 492–93. In reaching its determination, the Court stated:

Qualifying police officers as experts on the administration of the HGN test is a simple matter because ... "[t]he observation of HGN in a person and its interpretation as an effect of alcohol intoxication do not necessarily require expertise in physiology, toxicology, or any other scientific field. The nystagmus effect can be observed without mechanical, electronic or chemical equipment of any kind. At least in the simple form presented in this case, it requires no more medical training than ad-

ministration of other field sobriety tests, such as the one-legged balance."

*Id.* at 883, 811 P.2d at 493, (quoting *People v. Ojeda,* 225 Cal.App.3d 404, 275 Cal.Rptr. 472, 474 (1990)). The foundational evidence presented in this case shows that deputy Schueller was qualified as an expert under the *Garrett* analysis. She was trained in the HGN technique by the Idaho State Police, and she had received additional training on administration of the test at a separate seminar. Anderson's objection to her qualifications was properly overruled.

█ In his appellant's brief Anderson also presents as an issue whether the magistrate impermissibly commented on the HGN evidence when ruling upon Anderson's objection to Schueller's testimony. This issue is waived, however, as Anderson has presented no legal authority on this issue. A party waives an issue raised on appeal if either legal authority or argument is lacking. *State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). In the argument section of Anderson's appellant's brief, only two sentences are directed to this issue, one of which merely relates the magistrate's statement. No legal authority pertaining to this issue is cited or discussed. Therefore, we will not address this claim of error.

## C. Prosecutorial Misconduct

Anderson next raises an issue of prosecutorial misconduct. He asserts that the prosecutor pursued an insupportable DWP charge as a pretext to introduce evidence that would have been inadmissible if the DUI charge alone had been tried.

Early in Anderson's jury trial, the prosecutor called deputy Crawford to testify about the circumstances surrounding Anderson's arrest. When the deputy was testifying, both the DUI and the DWP charges were still pending against Anderson. On direct examination Crawford testified that, on the night of the arrest, Anderson admitted that his driver's license was suspended as a result of a prior DUI conviction. This license suspension was relevant to the DWP charge,[1] and Anderson's defense counsel did not object to the testimony. Later, during the State's case-in-chief, deputy Schueller was called to testify. During cross-examination of Schueller by defense counsel, the following exchange took place:

Q. Deputy Schueller did you arrest Mr. Anderson for driving while suspended on that evening, evening of July 4th?

A. After the initial arrest, yes, I booked him on it.

Q. And, have you been trained in the elements of that charge?

A. Yes.

. . . .

Q. What's Idaho code number for that charge?

. . . .

A. Oh, 18–8001.

Q. Okay. And, you're aware of the elements of 18–8001.

A. Yes.

Q. Do they include being in possession or in control of a motor vehicle in a parking lot?

A. At that time I was advised otherwise but at this time no. I know now that it's not.

Q. So, you know now that Mr. Anderson is not guilty of that crime, don't you?

A. Of driving while suspended?

Q. Right.

A. In my layman's interpretation of the law yes.

Q. Yes, meaning he's not guilty?

A. Yeah.

Later, the DWP charge was dismissed on a motion by the prosecutor.

Anderson neither objected to the evidence of the license suspension and prior DUI conviction nor moved to strike that testimony after the DWP charge was dismissed. On

1. The statute which prohibits driving without privileges, I.C. § 18–8001 states, in pertinent part:

    Any person who drives or is in actual physical control of any motor vehicle upon the high-ways of this state with knowledge that his driver's license, driving privileges or permit to drive is revoked, disqualified or suspended in this state or any other jurisdiction is guilty of a misdemeanor.

appeal, however, Anderson avers that deputy Crawford's testimony regarding the license suspension was relevant only to the DWP charge, which the prosecutor subsequently dismissed, and that the prosecutor thus engaged in misconduct by eliciting this prejudicial testimony. Anderson theorizes that the prosecutor was aware before trial that the DWP charge was invalid and intended to pursue it only long enough to create an opportunity to place evidence of Anderson's prior DUI and license suspension before the jury.

■ It is a general rule that, in the absence of a timely objection to an alleged error at trial, an appellate court will not consider the alleged error on appeal. *State v. LaMere*, 103 Idaho 839, 844, 655 P.2d 46, 51 (1982); *State v. Drennon*, 126 Idaho 346, 349, 883 P.2d 704, 707 (Ct.App.1994). However, an Idaho appellate court will consider alleged misconduct of the prosecutor that was not challenged at trial if the conduct was calculated to inflame the minds of jurors and arouse passion or prejudice against the defendant, or is so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence. *State v. Babb*, 125 Idaho 934, 942, 877 P.2d 905, 913 (1994).

■ Having thoroughly reviewed the record, we find no support for Anderson's allegation that the prosecutor knowingly pursued the DWP charge in order to place before the jury otherwise inadmissible evidence of Anderson's prior DUI conviction. It is equally likely that the mistake in pursuing the DWP charge was the result of oversight or inadvertence. Until the cross-examination of deputy Schueller, the prosecutor may have failed to appreciate that the location of Anderson's pickup in a parking lot permitted prosecution under the statute defining the DUI offense but not under the statute defining DWP.

■ Further, even if Anderson's allegation of prosecutorial misconduct is correct, it would not necessitate a new trial in this case. Where prosecutorial misconduct has been found, the next inquiry for the appellate court is whether it appears that the misconduct contributed to the verdict, leaving the appellate court with a reasonable doubt that the jury would have reached the same results had the misconduct not occurred. *State v. Reynolds*, 120 Idaho 445, 451, 816 P.2d 1002, 1008 (Ct.App.1991); *State v. Palin*, 106 Idaho 70, 75, 675 P.2d 49, 54 (Ct.App.1984). In this case, the jury heard that an analysis of Anderson's breath samples showed breath alcohol concentrations of .18 and .16, well above the then-effective statutory limit of .10. *See* I.C. § 18–8004 (1994) (amended 1997). They also heard testimony that when Anderson exited his pickup at deputy Crawford's request, he could hardly stand, that his speech was thick and heavy, that he carried a strong odor of alcoholic beverage, that he failed field sobriety tests, and that the HGN test showed indications of intoxication. On this record, we are confident beyond a reasonable doubt that the jury would have found Anderson guilty of DUI in the absence of evidence of his prior conviction for that offense.

### D. Right Against Self–Incrimination

Anderson next asserts that his right against self-incrimination under I.C. § 19–3003 was violated by the court at the sentencing hearing. At that hearing, the magistrate began questioning Anderson about how many times he had been charged with DUI. When Anderson did not audibly respond to one of these inquiries, the magistrate proposed that Anderson be placed under oath for further questioning. Anderson's counsel objected, arguing that a criminal defendant could not, under Idaho statutory law, be compelled to testify against himself even during the sentencing phase of the proceedings. In response, the magistrate stated: "That's certainly true, but, of course this court also can take that as an aggravating factor. So, what's your choice?" In order to avoid having his refusal to testify used as an aggravating factor in sentencing, Anderson took the witness stand and admitted that, in addition to the three DUI charges already known to the court, he had been charged with DUI on three other occasions in the mid–1970s. Anderson was then sentenced to serve six months in the county jail and pay a $1,000 fine. Sixty days of the jail term were sus-

pended, and Anderson was placed on probation for two years.

■ On appeal, Anderson contends that under I.C. § 19–3003 he was entitled to decline to answer questions from the magistrate without risk that his silence would be used against him. That statute states:

> A defendant in a criminal action or proceeding to which he is a party, is not, without his consent, a competent witnesses for or against himself. His neglect or refusal to give such consent shall not in any manner prejudice him nor be used against him on the trial or proceeding.

Anderson is correct in asserting that this statute was violated at his sentencing hearing. Under § 19–3003, Anderson was entitled to decline to answer the court's questions about his prior offenses.[2] The magistrate's admonition that Anderson's invocation of his right to remain silent could be used as "an aggravating factor" violated the statute's unambiguous directive that a defendant's refusal to testify may not prejudice him or be used against him in the criminal proceeding.

The State argues that Anderson's rights were not violated because he was not questioned about criminal acts for which he could have been subsequently charged. This argument is without merit. The statute does not protect a defendant only from giving testimony that might be used against him in a *subsequent* prosecution; it protects him from having either his own testimony or his refusal to testify used against him in the same proceeding in which the testimony is sought. The magistrate here threatened to use Anderson's silence as an aggravating factor in the present case, and the transcript re-veals that after Anderson testified, the information which he disclosed regarding prior DUI charges was given some weight by the magistrate in imposing sentence.

In order to cure this sentencing error, we remand the case for resentencing before a different magistrate.

### E.  Excessive Appeal Bond

■ Lastly, Anderson contends that the magistrate erred when he required that Anderson post a $10,000 bond in order to stay the sentence pending appeal. Anderson points out that $1,000 is the maximum bond authorized by I.C. § 19–3941 [3] for a stay of a judgment during a criminal appeal from the magistrate division to the district court. Although this Court agrees that the order requiring a $10,000 bond violated the statute, we perceive no remedy that can be afforded at this stage of the appeal. This error could have been remedied if Anderson had drawn it to the magistrate's attention by filing a motion for reduction of the bond pursuant to I.C.R. 54.5. Instead, however, Anderson posted the excessive bond and complained of the error for the first time in his appellate argument to the district court. Anderson has therefore foregone the opportunity for a remedy, and the issue is now moot.

### III

### CONCLUSION

Anderson's claim of error in the magistrate's order requiring a $10,000 appeal bond was rendered moot upon Anderson's posting of the ordered bond. Anderson has not

---

**2.** Although Anderson has not invoked his Fifth Amendment privilege against self-incrimination, either before the trial court or in this appeal, we note that the Fifth Amendment also prohibits compelling a defendant to testify against his will at a sentencing hearing. *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

**3.** Idaho Code § 19–3941 states:

> The party appealing may, at any time thereafter, if he desires to be released from custody during the pendency of the appeal, or desires a stay of proceedings under the judgment until the appeal be disposed of, enter into a recognizance, with two (2) sufficient sureties to be approved by the judge or justice, in an amount to be fixed by the judge or justice, but not exceeding one thousand dollars ($1,000) in any case, for the payment of any judgment, fine and costs that may be awarded against him on the appeal, and that he will faithfully prosecute the same and render himself in execution of any judgment or order rendered or entered against him in the district court.

shown that prosecutorial misconduct infected his trial or that the magistrate erred in admitting or excluding evidence. The judgment of conviction is therefore affirmed. However, due to the magistrate's error in compelling Anderson to testify at his sentencing hearing, we vacate Anderson's sentence and remand this case for resentencing before a different magistrate.

PERRY, J., and WALTERS, Acting J., concur.